## APPEAL OF THE UNIVERSAL MILKING MACHINE CO.

Docket No. 4780. Decided July 29, 1926.

Payments by the taxpayer to its stockholders, *held* to constitute a distribution of profits.

*W. W. Ross, Esq.*, and *H. Evans, C. P. A.*, for the petitioner.
*George G. Witter, Esq.*, for the Commissioner.

Before MARQUETTE, GREEN, and LOVE.

This appeal is from the determination of a deficiency in income and profits tax for the ten-month period ended October 31, 1919, in the amount of $10,141.07. The deficiency arises from the disallowance by the Commissioner of a deduction of $21,292.85 taken by the taxpayer on account of alleged ordinary and necessary business expenses.

### FINDINGS OF FACT.

The taxpayer is an Ohio corporation, organized in the year 1916 with a capital stock of $100,000, with its principal office and place of business at Columbus, and is engaged in the business of manufacturing milking machines.

In the fall of 1918 the taxpayer was in need of money and credit to carry on and expand its business, but was unable to obtain them in sufficient amounts. Finally, in December, 1918, at a meeting of the stockholders of the company, they agreed that they would jointly and severally guarantee the payment of any and all loans or other obligations that the company might obtain or incur from or to any bank or other financial institution, and in consideration therefor the company agreed to pay to the stockholders an amount equal to 6 per cent of its "net annual business", the same to be paid at the end of each fiscal year so long as the agreement should remain in force. The agreement was reduced to writing on December 9, 1918. The stockholders at the same time agreed to divide among themselves in proportion to their stock holdings the amount to be paid them by the company. A few days later the stockholders guaranteed in writing to the National Bank of Commerce, Columbus, Ohio, the payment of any and all loans that might thereafter be made by the bank to the taxpayer to the extent of $100,000. At the same time the stockholders furnished to the bank a statement of their net worth. The stockholders did not deposit any collateral with the bank nor were they ever called upon to pay any amount on account of their guarantee. At the time the contracts mentioned were made, the notes payable to the taxpayer amounted to only $10,447, and on October 31, 1919, they amounted to only $14,200. The contracts were canceled on October 31, 1919. On December 31, 1918, the stockholders were indebted to the taxpayer in the amount of $27,347.80 on notes given for stock, and on other accounts in the amount of $5,544.80. On October 31, 1919, they were indebted to the taxpayer on notes given for stock in the amount of $28,047.80.

The taxpayer's gross sales for the ten-month period ended October 31, 1919, were $346,314.23. In its income and profits-tax return

for that period it reported its gross sales as $346,314.23, its gross income as $174,409.08, and its net income as $18,490.79.

At the close of the ten-month period ended October 31, 1919, the taxpayer credited its stockholders, in proportion to the amount of stock held by them, with the amount of $21,292.85, as compensation to them under the contract of December 9, 1918, and also charged that amount on its books as an item of expense. The amounts so credited to stockholders were actually paid to them in the year 1920.

The amount actually credited and paid to the stockholders as compensation under the contract of December 9, 1918, the amount of their stock holdings, and their respective net worth as represented to the bank were as follows:

|  | Amount received | Amount of stock held | Net worth |
| --- | --- | --- | --- |
| John A. Schmitt | $6,238.00 | 29,400 | $29,000.00 |
| John G. G. Eklundh | 3,280.00 | 15,300 | 11,000.00 |
| R. J. Stevens | 4,620.00 | 21,600 | 230,000.00 |
| W. W. Stevens | 2,705.00 | 12,700 | 226,000.00 |
| J. F. Murphy | 1,107.85 | 5,200 | 3,000.00 |
| E. B. Shurtz | 1,320.00 | 6,200 | 2,500.00 |
| W. B. Wilson | 681.00 | 3,200 | 2,500.00 |
| F. C. Clark | 681.00 | 3,200 | 2,500.00 |
| S. M. Crowell | 660.00 | 3,200 | 2,000.00 |

In computing its net income for the ten-month period ended October 31, 1919, the taxpayer deducted, as an ordinary and necessary business expense, the amount of $21,292.85 credited or paid to its stockholders as above set forth. The Commissioner upon audit of the return disallowed the deduction and determined that there is a deficiency in tax for that period in the amount of $10,141.07.

OPINION.

MARQUETTE: The taxpayer contends that in December, 1918, the necessities of its business were such that it was justified in entering into a contract with its stockholders to pay them 6 per cent of its "net annual business" in consideration of their guaranteeing its loans and credits; that by the words "net annual business" the parties to the contract meant gross sales less dealers' commission, and that 6 per cent of the gross sales for the ten-month period ended October 31, 1919, represented a reasonable compensation to the stockholders for the services rendered by them and constituted an ordinary and necessary business expense of the taxpayer, which should be deducted in computing its net income. The taxpayer concedes, however, that 6 per cent of its gross sales for the period mentioned amounted to only $20,778.85 and that it was in error in paying to its stockholders the amount of $21,292.85 for their services and in deducting that amount from its gross income for the period involved.

The Commissioner contends that the payments to the taxpayer's stockholders, involved herein, are not proper deductions in computing the taxpayer's net income, for the reason that they are not reasonable compensation for services rendered but are in fact a distribution of profits.

Upon consideration of the evidence presented, we are of the opinion that the determination of the Commissioner should be approved. Conceding, for the purpose of argument, that the taxpayer is correct in construing the words " net annual business " in the contract as meaning gross sales less dealers' commission, and that its stockholders rendered services under that contract, we think that the compensation is out of all proportion to the value of the services. So far as the record shows, the taxpayer did not borrow any considerable amount of money under the line of credit guaranteed by its stockholders, and they were not called upon to pay anything on account of their guarantee. Payment of approximately $21,000 to them for guaranteeing loans which actually amounted to less than $100,000 is, it seems to us, entirely unreasonable. Furthermore, it appears that, with the exception of R. J. and W. W. Stevens, the stockholders owned little or nothing except their stock in the company, and that when they guaranteed the company's credit, they in fact risked nothing, since the assets of the company, which gave whatever value the stock had, would first be subject to the payment of the company's debts. In addition, it may be pointed out that the stockholders, during the entire period under consideration, were indebted to the taxpayer in the amount of more than $28,000, which, so far as the record shows, was more than the amount the taxpayer borrowed under the credit guaranteed. In view of these facts, and of the further fact that the payments in question were made to the stockholders in proportion to their stock holdings, we are of the opinion that they in fact constituted a distribution of profits and not reasonable compensation to the stockholders for services rendered by them.

*The deficiency is $10,141.07. Order will be entered accordingly.*

SMITH and STERNHAGEN concur in the result only.